IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GARDEN RIDGE CORPORATION, *et al.*, | ) | Case No. 04-10324 (RB) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | Re: Docket No. 1454 |

**MEMORANDUM OPINION WITH RESPECT TO APPLICATION BY PRIME LOCATIONS, LLC FOR ALLOWANCE OF ADMINISTRATIVE EXPENSES CLAIM[1]**

Prime Locations, LLC ("Prime") moved this Court by motion dated March 28, 2005 [Docket No. 1454] (the "Motion") for allowance of an administrative expense claim based on work performed and expenses incurred on behalf of the Debtors. The United States Trustee ("UST") filed an objection to the Motion [Docket No. 1562], arguing that professionals whose retention was not approved by the Court cannot seek compensation as an administrative expense.

## FACTS

On February 2, 2004, (the "Petition Date"), Garden Ridge L.P. ("Garden Ridge" or the "Debtors") and its affiliates (other than Garden Holdings, Inc.[2]) filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.[3] Prior to the Petition Date, the Debtors retained Prime Locations, LLC as their real estate consultants.[4] Prime continued to work for the Debtors post-petition pending Court approval of their employment. Prime provided numerous services for the

---

[1] This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

[2] Garden Holdings, Inc. filed for chapter 11 relief on February 4, 2004 (Case No. 04-10365).

[3] Unless otherwise indicated, all citations to statutory sections are to title 11 of the Bankruptcy Code (the "Code"), 11 U.S.C. § 101 *et seq.*

[4] The Agreement for Consulting Services (the "Engagement Letter") was effective December 19, 2003, and is attached as Exhibit A to the Debtors' application to employ Prime [Docket No. 109].

Debtors, including creating a database of lease information and alternative lease sites that is still used by the Debtors today.

On February 13, 2004, the Debtors filed an application to employ Prime pursuant to sections 327(a) and 328(a) and Federal Rule of Bankruptcy Procedure 2014(a) *nunc pro tunc* to the Petition Date [Docket No. 109] (the "Application to Employ"). After receiving informal oral objections to the Application to Employ, including an objection by the Official Committee of Unsecured Creditors to Prime's fee structure, the Debtors withdrew the Application to Employ on March 8, 2004 [Docket No. 248].[5] The Debtors ultimately retained Huntley, Mullaney & Spargo ("Huntley") to provide services similar to those originally provided by Prime. Huntley's retention was approved by order entered April 19, 2004. Even after the Application to Employ was withdrawn, Prime assisted the Debtors in the transition to the new real estate consultants. The Motion therefore requests compensation for fees and expenses incurred from the Petition Date through April 15, 2004.[6]

## DISCUSSION

The issue before the Court is whether Prime's fees and expenses are compensable as an administrative expense of the estate.

Section 503(b) provides, in relevant part: "After notice and a hearing, there shall be

---

[5] During oral argument on the Motion, the Debtors also submitted that it wanted a broader range of services from its real estate consultants.

[6] The total amount originally sought by Prime equals $132,641.27, which represents fees of $112,280.00, expenses of $3,061.27 and legal fees of $17,300.00. Prime withdrew the request for reimbursement of its legal fees after the Debtors objected to payment of this expense. The reduction brings the total request to $115,341.27. The Debtors indicated during oral argument that they do not object to paying Prime's fee and expenses if the Court authorizes payment.

allowed administrative expenses, . . . , including – (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case; . . . (2) compensation and reimbursement awarded under section 330(a) of this title; . . . ." Section 503(b)(1)(A) does not explicitly define the "actual and necessary costs of preserving the estate." However, courts have construed the terms "actual" and "necessary" narrowly in order to keep administrative expenses to a minimum. *In re N.P. Min. Co., Inc.*, 963 F.2d 1449, 1454 (11th Cir. 1992) (citation omitted).

Prime argues that it is entitled to compensation pursuant to section 503(b)(1)(A) since it provided actual and necessary services to the estate. Neither the UST nor the Debtors deny that the work performed by Prime was beneficial to the estate. The UST, however, correctly asserts that professionals cannot be reimbursed under section 503(b)(1)(A).

> The authority to pay administrative expenses for professionals, . . . , is found not in section 503(b)(1)(A) but in section 503(b)(2) which permits payment as an administrative expense for "compensation and reimbursement awarded under section 330(a)." Section 330(a), in turn, empowers the court to award "reasonable compensation" to, *inter alia*, a "professional person employed under section 327."

*F/S Airlease II, Inc. v. Simon*, 844 F.2d 99, 108-09 (3d Cir. 1988), *cert. denied*, 488 U.S. 852 (1988). This seemingly harsh reading of the Code is particularly true because if a professional "were able to be compensated under section 503(b)(1)(A), it would render section 327(a) nugatory and would contravene Congress' intent in providing for prior approval." *Id.* at 109.

Furthermore, control by the bankruptcy court is necessary to enable the Court to contain the estate's expenses and avoid intervention by unnecessary participants. "The purpose of the rule requiring prior court authorization of a professional's appointment is to eliminate volunteerism and thus aid the court in controlling estate administrative expenses." *In re Haley*,

950 F.2d 588, 590 (9th Cir. 1991) (citing *In re Willamette Timber Systems, Inc.*, 54 B.R. 485, 488 (Bankr. D. Or. 1985)); *see also In re Met-L-Wood Corp.*, 103 B.R. 972, 975 (Bankr. N.D. Ill.1989) (setting out policies underlying section 327); 2 Lawrence P. King, *et al.*, Collier on Bankruptcy § 327.03[2][b] at 327-18 (15th Ed. Revised 2004) ("The services for which compensation is requested should be performed pursuant to appropriate authority under the Code and in accordance with an order of the court. Otherwise, the person rendering services may be considered an officious intermeddler or a gratuitous volunteer." (Citations omitted)). A professional "cannot emerge 'out of the blue,' and receive compensation without having obtained prior court approval of the Bankruptcy Court." *Haley*, 950 F.2d at 590.

Prime urges that the current application presents an unusual situation, where the Debtors requested Prime's assistance and then changed its mind regarding the Application to Employ, and should thus be analyzed under those factors used in determining the propriety of retroactive approval of an employment application. Such approval is only granted after the court determines: (1) the applicant satisfies the disinterestedness requirement of section 327(a); and (2) extraordinary circumstances warrant retroactive approval. *F/S Airlease*, 844 F.2d at 105-06 (citing *In re Arkansas*, 798 F.2d 645, 650 (3d Cir. 1986)). Factors to be considered when evaluating "extraordinary circumstances" include:

> whether the applicant or some other person bore responsibility for applying for approval; whether the applicant was under time pressure to begin service without approval; the amount of delay after the applicant learned that initial approval had not been granted; the extent to which compensation to the applicant will prejudice innocent third parties; and other relevant factors.

*Id.* (quoting *Arkansas, supra*).

Although the facts of this case are compelling, the Court is simply unable to extend *nunc*

-5-

*pro tunc* analysis to the present situation after the Third Circuit unequivocally held that section 503(b)(1)(A) cannot be used to reimburse professionals for services rendered to the estate. *Id.* at 108-09. This outcome may seem unfair to Prime, a professional who provided beneficial services to the estate, however, it is the bright line rule in this District and "the unavoidable consequence of the statutory requirement of prior approval."[7] *Id.* at 108.

## CONCLUSION

For the reasons set forth above, the Application by Prime Locations, LLC for Allowance of Administrative Expense Claim [Docket No. 1454] is DENIED. A separate order shall issue.

Dated: June 15, 2005

                                           _____
                                           Honorable Donal D. Sullivan
                                           United States Bankruptcy Judge

---

[7] It would be unfortunate if other debtors played fast and loose with this rule, promising employment and then withdrawing the application to employ after valuable services have been rendered by the professional. However, this is one of the many risks professionals take when they work in the field of bankruptcy.